IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 18, 2020

**STATE OF TENNESSEE v. SEBASTIAN A. STEVENS**

**Appeal from the Circuit Court for Rutherford County**
**No. F-77444         David M. Bragg, Judge**

_____

**No. M2019-01036-CCA-R3-CD**

_____

A Rutherford County jury convicted the Defendant, Sebastian A. Stevens, of three counts of aggravated assault and one count of aggravated kidnapping. The trial court sentenced the Defendant to a total effective sentence of eight years to be served consecutively to a prior sentence. On appeal, the Defendant contends that the evidence is insufficient to support his convictions. He also contends that the trial court erred when it excluded the victim's prior conviction and when it allowed the State to introduce evidence of the Defendant's prior incarceration. The Defendant lastly contends that the trial court erred when it ordered that his effective sentence of eight years in this case be served consecutively to his sentence for a previous conviction. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Melton, District Public Defender; John D. Driver, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Sebastian A. Stevens.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Dana S. Minor and Sarah N. Davis, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from a domestic violence incident between the Defendant and the

victim, his girlfriend at the time and with whom he lived and shared a child. The victim communicated to the Defendant that she wanted to end their relationship, after which the Defendant threatened her with a knife, grabbed her by the neck, and hit her in the mouth. The Defendant refused to let the victim leave their residence. All of this occurred while their baby was in the room or in the victim's arms. The Defendant later took the baby from the victim. For these events, a Rutherford County grand jury indicted the Defendant for five counts of aggravated assault, one count of domestic assault, and one count of especially aggravated kidnapping. It appears that, prior to trial, the State moved to dismiss two of the aggravated kidnapping charges and the domestic assault charge. The Defendant proceeded to trial on three counts of aggravated assault and one count of aggravated kidnapping.

Prior to trial, the State filed a motion to introduce evidence of the Defendant's prior bad acts pursuant to Tennessee Rule of Evidence 404(b). After the jury was impaneled, but prior to the presentation of the charges, a jury-out hearing was held on the motion, during which the victim testified that she had been in a relationship with the Defendant and that they had an altercation in May of 2016 that resulted in the Defendant's arrest. The Defendant later pleaded guilty to domestic assault and received probation. As one of the conditions of his probation, the Defendant was ordered to have "peaceful contact" with the victim. That probation order was still in effect at the time of the incident in the case at hand.

The victim was questioned by the trial court, and she testified that, when the Defendant pleaded guilty to domestic assault in May 2016, for which he received probation, the victim was a few months pregnant with his child. The victim clarified that the "peaceful contact" order was a condition of the Defendant's probation. The victim gave birth to the couple's child in December of 2016. A later incident on February 1, 2017, led the victim to call the police, albeit five days later, and seek an order of protection because she felt she was in danger if the Defendant came to her home.

Based on the victim's testimony, the trial court ruled that it would not allow testimony about the Defendant's prior bad acts. The trial court stated that it would allow the victim to testify that she called the police to seek an order of protection because the Defendant was out of her house at that time and thus, she felt safe to do so. The trial court stated that it was not relevant that the victim's call to the police resulted in the Defendant's arrest and subsequent criminal charges. However, the trial court stated that it would allow proof of the peaceful contact order in place at the time of the incident in the present case.

## A. Trial

The following evidence was presented at the Defendant's trial on these charges:

The victim testified that she grew up in Murfreesboro and worked in the childcare sector for fifteen years following the completion of her education. At the time of trial, the victim was employed as a leasing consultant at an apartment facility. She testified that she had been in a romantic relationship with the Defendant and that he was the father of her youngest child.

The victim testified that, on May 11, 2016, an incident between herself and the Defendant occurred and resulted in the Defendant's arrest and conviction of domestic assault. The judgment was entered in July of 2016, and the Defendant was ordered to have only "peaceful contact" with the victim as a condition of his probationary sentence. The "peaceful contact" order was entered into evidence. The victim stated that she assumed the order lasted as long as the Defendant's probation sentence, eleven months and twenty-nine days. The victim testified that she was pregnant with the Defendant's child at the time of the guilty plea and later gave birth to the couple's child in December of 2016.

The victim testified that on February 1, 2017, the victim and the Defendant got into an argument; the victim wanted to end their relationship because the Defendant had cheated on her. Their argument began early in the morning, around 6 a.m. The couple's infant child was present. Their argument "escalated" and the Defendant told the victim that she "wasn't allowed" to break up with him. The victim tried to leave the discussion but the Defendant physically prevented her from doing so. The victim told the Defendant that she was going to leave and was going to get their baby out of its bouncy chair. As the victim rose from a chair to do so, the Defendant grabbed her neck and squeezed it, forcing her back down into the chair. The victim stated that she was not able to breathe while the Defendant squeezed her neck. She believed that he held her neck for thirty seconds. The pair continued arguing for fifteen minutes or so, and the Defendant grabbed her neck again, stating, "You're not leaving me." The victim confirmed that the Defendant used one hand to grab her neck. The second time he did so, he "knocked" the victim in her mouth and cut her chest with his fingernail. The victim sustained a mark on her chest and swelling on her mouth.

The Defendant walked out of the room, and the victim saw an opportunity to take their baby and leave. She grabbed the baby and was met by the Defendant at the front door. The Defendant brandished a steak knife and told her that if she "wanted a way out," it was going to be "in a body bag." The victim was holding the baby at that point and felt she had no choice but to give the baby to the Defendant. The Defendant's sister arrived soon after. The victim clarified that the Defendant held the knife is his hand while he was holding the baby and that she did not feel safe to leave. The Defendant handed the baby to his sister who handed the baby to the victim; the sister then left with the Defendant, but the Defendant told the victim he would be back, which made her feel unsafe.

3

The victim testified that she took photographs of her injuries on her lip and her chest. She testified that she did not call the police after the Defendant left the residence. In the ensuing days, the victim was confused and felt out of control. She feared for her and her baby's safety. Several days later, when the victim "knew [the Defendant] was out of the house, and he wasn't coming back any time soon," the victim called the police. The victim stated she did not know who to talk to and was worried that whatever she did would result in something bad happening to her or her baby.

The victim clarified that the Defendant returned to their residence following their February 1 argument and in the three or four days following, he did not leave the house to go to work. The Defendant was scheduled to work the night after their argument, and he got fired when he did not show up. The victim went to work but did not call the police from her work because her baby was with the Defendant. When the victim did eventually call the police, she filed for an order of protection against the Defendant. The Defendant was later arrested.

On cross-examination, the victim testified that her relationship with the Defendant had seen many "ups and downs" but denied that she had "done anything" to bring about conflict in their relationship. The Defendant requested a hearing outside the presence of the jury and informed the trial court that he wished to impeach the victim's testimony that she did not cause problems with the Defendant; the Defendant sought to use the victim's prior conviction for reckless endangerment involving an automobile crash with the Defendant.

Outside the presence of the jury, the victim agreed that she pleaded guilty to reckless endangerment on July 22, 2016 as a result of an automobile crash involving herself and the Defendant. The trial court stated that it would allow the Defendant to question the victim about the circumstances of the crash but not the victim's subsequent conviction.

In the presence of the jury, the victim reiterated that she was not responsible for the problems in her relationship with the Defendant. She agreed that an automobile accident occurred in 2015 involving a vehicle that was being driven by the Defendant while she rode as a passenger. The victim agreed that, while the Defendant was driving, she grabbed the steering wheel of the vehicle, which caused an accident. The victim stated that she and the Defendant both sustained minor injuries as a result.

The victim testified that she took photographs of her injuries on February 1, 2017, the day of her altercation with the Defendant. She reiterated that she did not call the police that day because she did not feel safe or know how long the Defendant would be out of the house. She agreed that her physical injuries were not visible five days later when the

4

police responded to her call. The victim "called out" from work the following day, February 2, and stayed home. The Defendant also was home that day. On February 4, the victim and the Defendant went bowling together, but the victim still did not feel like she could call the police. The victim agreed that there were no witnesses to the Defendant choking her and pushing her into the chair. The victim agreed that she spoke to the Defendant by telephone while he was in jail and wrote letters to him.

On redirect-examination, the victim testified that she made the comment about killing the Defendant out of fear for herself and her baby. Addressing their automobile accident that led to her reckless endangerment plea, the victim stated that she was arguing with the Defendant in front of the victim's older son. The victim wanted to get out of the car and call the police, and when the Defendant refused, she grabbed the steering wheel and wrecked the car.

When asked again about why the victim waited to call the police after the February 1, 2017 altercation, the victim stated that she was more concerned with what would happen to her two-month-old child and that she felt like the Defendant would hurt them.

At this point, outside the presence of the jury, the State requested that the victim be allowed to explain that she felt safe to call the police on February 5 because the Defendant was in jail on a 12-hour hold at that point. The trial court denied the request but stated that it would allow the State to ask the victim whether she was sure the Defendant would not return to their home which prompted her call to the police. In the presence of the jury, the victim testified that she called the police when she was "positive" at that moment the Defendant would not come home. Prior to that moment, the victim had no way of knowing if he would return.

On recross examination, the Defendant's counsel asked the victim again about her "certainty" that the Defendant would not return home. She replied, "He wasn't getting out. It wasn't just in my mind. He was somewhere where he had no choice."

Eric Deleon testified that he worked as a patrol officer for the Murfreesboro Police Department and responded to a call on February 5, 2017. The basis of the call was "advice for an order of protection." Office Deleon met with the victim who was home with her son. The victim was "frazzled" and emotionally upset. The victim provided enough information to indicate to Officer Deleon that an order of protection was warranted. The victim showed him photographs of her injuries and damage to her home that had been sustained during an incident four days prior. The victim's injuries were not present on her body on the day Officer Deleon met with her. Officer Deleon personally observed the damage to the kitchen door of the victim's home. Based on his observations, Officer Deleon decided to obtain a warrant for the Defendant's arrest.

5

Based on this evidence, the jury convicted the Defendant of three counts of aggravated assault and one count of aggravated kidnapping.

## B. Sentencing

The trial court subsequently held a sentencing hearing, during which it admitted the presentence report and victim impact statement as an exhibit. No other evidence was presented.

At the conclusion of the hearing, the trial court stated that it was considering the evidence, exhibits, and the principles of sentencing. The trial court stated that it had considered the nature and characteristics of the Defendant's conduct towards the victim as well as the Defendant's potential for rehabilitation. The trial court stated that the Defendant was a Range I, Standard Offender. Addressing the applicable enhancement factors, the trial court, based on the Defendant's long criminal history including convictions for domestic assault and other violent crimes, applied enhancement factor (1), that the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. T.C.A. § 40-35-114(1) (2019). The trial court applied factor (8), that the Defendant had failed to comply with the conditions of release into the community, as he was on probation when these felonies were committed. § 40-35-114(8) (2019).

For the aggravated kidnapping conviction, a Class B felony, the trial court imposed an eight-year sentence to be served consecutively to the Defendant's sentence for a probation violation in another case. It stated that it chose to impose the consecutive sentence based on the statutory mandate that the aggravated kidnapping conviction be served consecutively and based on the nature of the Defendant's offense. For the aggravated assault convictions, Class C felonies, the trial court imposed four-year sentences for each and ordered them to be served concurrently with the eight-year sentence for kidnapping, for a total effective sentence of eight years. It is from these judgments that the Defendant now appeals.

The parties filed appellate briefs and on appeal, this court filed an order stating that the Defendant's brief did not contain appropriate citations to authority or references to the record as required by the appellate rules. The order directed that the Defendant's brief be stricken and directed the Defendant to file a substitute brief that complied with the appellate rules. *See* Tenn. Ct. Crim. App. R. 10(a). Thereafter, the Defendant filed a substitute brief and the State filed an amended brief in response.

## II. Analysis

6

On appeal, the Defendant contends that the evidence is insufficient to support his convictions.[1]  He also contends that the trial court erred when it excluded the victim's prior conviction of reckless endangerment and when it allowed the State to introduce evidence of his incarceration.  The Defendant lastly contends that the trial court erred when it ordered that his sentences in this case, although concurrent with each other, be served consecutively to his sentence from a previous conviction.  The State initially responds that the Defendant's substitute brief fails to comply with the appellate rules as directed by this court's order, thereby waiving this appeal.   The State further responds that the Defendant's insufficiency of the evidence argument is waived because it is outside the scope of this court's order pertaining to the Defendant's substitute brief.   The State also responds that the trial court properly exercised its discretion when it excluded evidence of the victim's prior conviction for reckless endangerment and did not allow testimony about his incarceration.  Finally, the State responds that the trial court properly exercised its discretion when it imposed an effective eight year sentence consecutively to the Defendant's prior sentence for a prior conviction.

## A.  Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions. He contends that there were no independent witnesses, other than the victim and himself, to verify the events upon which his convictions are based.  He further contends that the victim's confinement was incidental to the assault, and thus evidence to support the kidnapping conviction was not sufficient.  The State responds that the Defendant has waived this argument because it was not contained in his original brief, and this court's order striking his original brief and directing an amended brief be filed did not allow for additional issues to be raised.   The State contends that even so, the evidence was sufficient to support the Defendant's convictions.   Notwithstanding any deficiencies in the Defendant's substitute brief, we will, in the interest of justice, review the sufficiency of the evidence.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)).  This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.  *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App.

---

[1] This issue was not included in the Defendant's original brief.

7

1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

8

"Aggravated kidnapping is false imprisonment, as defined in [T.C.A.] § 39-13-302, committed [w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." T.C.A. § 39-13-304(a)(5). "A person commits the offense of false imprisonment who knowingly . . . confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a). Aggravated assault is defined as "intentionally or knowingly commit[ing] an assault as defined in [T.C.A.] § 39-13-101, where the assault "involve[s] the use or display of a deadly weapon" or "involve[s] strangulation or attempted strangulation." T.C.A. § 39-13-102(a)(1)(A)(iii), (iv). A person commits assault who: (1) Intentionally, knowingly or recklessly causes bodily injury to another; (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative. T.C.A. § 39-13-101. Additionally, "[a] person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual. . ., intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual. . . . T.C.A. § 39-13-102(c).

The evidence presented, viewed in the light most favorable to the State, was that during an argument between the victim and the Defendant, the Defendant forced the victim into a chair by putting his hand around her neck and pushing her down. Their argument progressed, and when the victim attempted to leave their residence, the Defendant blocked her from doing so and grabbed her by the neck a second time. He knocked the victim in the mouth while he did so, injuring her, and he also scratched her chest. When the victim tried to leave the residence again, the Defendant brandished a knife and told her she would only leave in a "body bag," making the victim feel that she could not leave without risking death or harm to her baby. This is sufficient evidence from which a rational trier of fact could conclude that the Defendant had assaulted the victim on three separate occasions and held her inside their residence against her will, preventing her from leaving and substantially interfering with her liberty. Accordingly, the Defendant is not entitled to relief as to this issue.

### B. Victim's Prior Conviction

The Defendant next contends that the trial court erred when it did not allow him to introduce evidence of the victim's prior conviction for reckless endangerment. He contends that, as he was the "victim" of the reckless endangerment offense, such conviction went towards the victim's motive for bringing the complaint against him in the

present case. The Defendant argues that by preventing cross-examination of the victim on this subject, the trial court prevented him from presenting a clear picture of the couple's relationship. The State responds that the trial court properly allowed the Defendant to ask the victim about the automobile crash that led to her conviction for reckless endangerment but, since the victim admitted to her role in the crash, the trial court properly excluded the extrinsic evidence of her resulting conviction. We agree with the State.

Generally, "[a]dmission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004). The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." *Id.* Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Rule 609 of the Tennessee Rules of Evidence permits a party to attack the credibility of a witness by presenting evidence of prior convictions if four conditions are satisfied. *See* Tenn. R. Evid. 609. As applicable here, the prior conviction must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or false statement. *See* Tenn. R. Evid. 609(a)(2).

The trial court, during a jury-out hearing, stated that it would allow the Defendant to question the victim about the circumstances of the crash, but not about the victim's subsequent conviction. It concluded that the victim's testimony about the incident, specifically her role in the accident and the resulting injuries, was relevant to her motive, but that her resulting conviction, a misdemeanor without a basis of "dishonesty," was not admissible, presumably pursuant to Rule 609(a)(2).

The trial court did not abuse its discretion when it excluded the victim's conviction but allowed the Defendant to cross-examine the victim about the automobile crash. The Defendant was able to question the victim about the entire incident, including eliciting testimony that the victim caused the accident by grabbing the steering wheel and that she ended up in jail as a result of the incident. The trial court did not abuse its discretion when it excluded evidence of the victim's conviction. The Defendant is not entitled to relief as to this issue.

## C. Victim's Testimony Referencing Defendant's Incarceration

The Defendant contends that the trial court erred when it allowed the State to introduce evidence of the Defendant's incarceration as part of its theory that the victim did not feel safe to call the police until he was arrested, thus explaining the victim's delay in doing so from February 1 to February 5, 2017. He contends that the introduction of evidence of his incarceration was prejudicial and misleading to the jury. The State responds that the victim testified in front of the jury that she called when she felt safe to do so because she knew the Defendant would not return to their residence; the trial court limited the victim's testimony and prevented her from further testifying that her certainty was because the Defendant was in jail. Since the evidence of the Defendant's incarceration was not in fact introduced to the jury, the State contends that this issue is without merit. We agree with the State.

As the State points out, the victim never testified in the presence of the jury that the Defendant was incarcerated. In fact, defense counsel probed the victim about her certainty that the Defendant would not return, and she alluded to knowing why he would not return without ever actually mentioning his incarceration. Furthermore, the trial court specifically instructed the victim during a jury-out hearing that she could not testify that the Defendant was incarcerated. In light of this, the trial court did not abuse its discretion when it limited the victim to testifying only that she knew the Defendant would not come home. The Defendant is not entitled to relief as to this issue.

## D. Sentencing

Finally, the Defendant contends that the trial court erred when it imposed consecutive sentences. He contends that there was no evidence of his being a professional criminal or committing criminal acts for his livelihood. He further contends that his history of criminal convictions is not extensive and that consecutive sentencing in this case was not mandatory. The State responds that the trial court properly exercised its discretion when it imposed consecutive sentencing, in light of the fact that the Defendant was on probation for domestic assault at the time of this incident. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State*

11

*v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the statutory criteria by a preponderance of the evidence. As it relates to this case, the trial court found the following criteria applicable:

(6) The defendant is sentenced for an offense committed while on probation;

T.C.A. § 40-35-115(6). The imposition of consecutive sentencing, however, is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed [.]" T.C.A. § 40-35-103(2), (4).

We review a trial court's decision to impose consecutive sentences for an abuse of discretion with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). The Defendant does not dispute that he was on probation when he committed these offenses against the victim. We conclude that the trial court properly applied consecutive sentencing factor (6), which is sufficient to support consecutive sentencing. Moreover, we conclude that the sentence is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles of the sentencing statute. The Defendant is not entitled to relief as to this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE